# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JONATHAN DAYTONA BELK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10CV724 |
| ) | |
| LEWIS O. SMITH and LARRY JONES, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States Magistrate Judge for recommended rulings on Defendant Larry Jones' Motion to Dismiss and Motion for Reconsideration (Docket Entry 28) and Defendant Lewis Smith's Motion to Dismiss the Fourteenth Amendment Claims and for Reconsideration of the Sufficiency of the ADA and Rehabilitation Act Claims (Docket Entry 30). (See Docket Entry dated Jan. 8, 2014; see also Docket Entry dated Feb. 15, 2012 (assigning case to undersigned Magistrate Judge).) For the reasons that follow, the Court should grant both Motions in part and deny them in part.

### I. Background

Plaintiff commenced this case by filing a pro se prisoner form Complaint under 42 U.S.C. § 1983. (Docket Entry 2.) The Complaint alleges that Defendants Lewis O. Smith, the Facility Administrator of Albemarle Correctional Institution ("Albemarle") in Badin, North Carolina, and Larry Jones, a Medical Doctor (see id. at 2), denied

Plaintiff's requests to take on jobs during his incarceration at Albemarle in order to "make [Plaintiff] have to max out [his] sentence," in violation of his constitutional rights (id. at 3). It further alleges that Defendant Jones conducted a three-minute examination of Plaintiff upon Plaintiff's arrival and asked only if Plaintiff could stand for an hour. (Id.) Plaintiff thereafter "learned that restrictions were put on [him] without [him] knowing such as no standing for [] more than a [sic] hour, no going up steps, can't pick no more than 10 lbs. up . . . ." (Id.) The Complaint asserts that Plaintiff previously held jobs while incarcerated in other facilities where he "worked 40+ hours weekly standing all day long making and shipping out furniture." (Id.) As a result of these events, the Complaint apparently asserts claims under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as under the Americans with Disabilities Act ("ADA") and the Federal Rehabilitation Act of 1973 ("Rehabilitation Act"). (See id.) The Complaint requests injunctive relief, compensatory damages in the amount of $500,000 and punitive damages in an amount to be determined. (Id. at 4.)

This Court (per Senior United States District Judge N. Carlton Tilley, Jr.) dismissed Plaintiff's Eighth Amendment and individual-capacity ADA and Rehabilitation Act claims against both Defendants, and dismissed Plaintiff's claims for injunctive relief as moot. (Docket Entry 26 at 21.) However, the Court declined to dismiss

Plaintiff's official capacity claim under the Rehabilitation Act. (Id.) The Court also authorized Plaintiff's claims under the ADA (official-capacity) to proceed "to the extent that they arise from adequately pled constitutional violations," but permitted Defendants 45 days to address the sufficiency of Plaintiff's Fourteenth Amendment allegations. (Id.) Both Defendants subsequently filed the instant Motions. (Docket Entries 28, 30.)[1] They argue that Plaintiff's Complaint does not articulate constitutional violations and further request that the Court reconsider its determination that the Complaint alleges facts sufficient to state a claim under the ADA and the Rehabilitation Act. (Id.) Plaintiff has not responded. (See Docket Entries dated Oct. 31, 2013, to present.)[2]

## II. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint falls short if it does not "contain sufficient factual matter,

---

[1] Defendant Smith for the most part adopts the arguments set forth by Defendant Jones. (See Docket Entry 30 at 1 n.1, 2-8 (citing Docket Entries 28 and 29).)

[2] Under this Court's Local Rules, failure to respond to a motion generally warrants granting the relief requested. See M.D.N.C. LR7.3(k) ("If a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."). However, in the context of "motions to dismiss, . . . the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014).

3

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although the Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A

*pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

## A. Habeas/*Heck* Bar

Defendants first contend that Plaintiff's Section 1983 claims are barred because he impermissibly "challenges the fact or duration of his confinement and seeks immediate or speedier release," for which habeas corpus provides the sole remedy. (Docket Entry 29 at 5; see also Docket Entry 31 at 3.) As this Court (per Judge Tilley) noted, Plaintiff initiated this case while in prison but has since been released, rendering his requests for injunctive relief moot. (See Docket Entry 26 at 6.) Moreover, Plaintiff's success in the instant case would not "'necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence.'" (Docket Entry 29 at 6 (quoting Wilkinson v. Dotson, 544 U.S. 74, 81 (2005)).)

In Edwards v. Balisok, 520 U.S. 641 (1997), the United States Supreme Court recognized a distinction between the position of the plaintiff in that case, who challenged the procedures used in a prison disciplinary proceeding that ultimately revoked his previously earned good-time credits, and the limitations of Heck:

> There is, however, this critical difference from *Heck*: Respondent, in his amended complaint, limited his request to damages for depriving him of good-time credits *without due process*, not for depriving him of good-time credits *undeservedly* as a substantive matter. That is to say, his claim posited that the procedures were wrong, but not necessarily that the result was. The distinction between these two sorts of claims is clearly established in our case law, as is the plaintiff's entitlement to recover at least nominal damages under § 1983 if he proves the former one without also proving the latter one.

Id. at 645.

Plaintiff's Complaint permits a similar reading. It does not contend that Defendants denied Plaintiff credits that he rightfully earned, but rather challenges the procedures they utilized, which limited his ability to earn credits. (See Docket Entry 2 at 3.) Moreover, as Defendants themselves point out (see Docket Entry 29 at 14-15, 17-18), any number of reasons may have caused prison employers to deny Plaintiff's job applications. Accordingly, if Plaintiff prevailed on his instant constitutional claims, that outcome would not necessarily result in a finding that Plaintiff should have received earlier release from prison. Heck therefore does not bar Plaintiff's claims.[3]

---

[3] In Wilson v. Johnson, 535 F.3d 262 (4th Cir. 2008), the Fourth Circuit determined that a former prisoner's § 1983 claim seeking damages for prior unlawful confinement could proceed even without showing favorable termination where he could not pursue a habeas petition. Id. at 267-68. In that case, the prison continued the plaintiff's release date four months, which the plaintiff challenged as wrongful imprisonment. Id. at 263. The court recognized that the plaintiff could not have obtained judgment on a habeas petition before his release, such that § 1983 represented his sole option. Id. at 268 n.8. The court stated
(continued...)

6

## B. Due Process Claim(s)

Defendants next contend that Plaintiff's due process claim must fail because "Plaintiff did not have a constitutional liberty interest in obtaining a job while incarcerated." (Id. at 7; see also Docket Entry 31 at 3.) The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. "To prevail on a § 1983 claim challenging a state prison's classification system, a claimant must show (i) that he had a protected liberty interest in receiving or obtaining a particular classification; (ii) that his interest was adversely affected by the alleged conduct; and (iii) that he did not receive due process." Gaskins v. Johnson, 443 F. Supp. 2d 800, 804 (E.D. Va. 2006) (citing Slezak v. Evatt, 21 F.3d 590, 593-94 (4th Cir. 1994)). Although inmates may possess a liberty interest "[w]hen a loss of already-earned statutory good-time credits is at issue," see id. at 805, "the classifications and work assignments of prisoners in [state] institutions are matters of prison administration, within the discretion of the prison administrators

---

³(...continued)
that it did "not believe that a habeas ineligible former prisoner seeking redress for denial of his most precious right – freedom – should be left without access to a federal court." Id. at 268. Plaintiff in the instant case filed this suit four months before his release from prison. (See Docket Entry 2 at 1; Docket Entry 16-1 at 2.) The reasoning in Wilson may apply in this case; however, given the foregoing discussion, the Court need not reach that issue.

7

. . . [and] [t]o hold that they are 'within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges,'" Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) (quoting Meachum v. Fano, 427 U.S. 215, 228-29 (1976)). Plaintiff's allegations in the instant case - that Defendants arbitrarily limited his ability to work while incarcerated - thus do not concern a protected liberty interest.

Nor does the Complaint allege facts establishing a substantive due process claim. "Broadly speaking, the substantive due process provision of the Fourteenth Amendment protects against egregious, arbitrary governmental conduct. Only governmental conduct that shocks the conscience is actionable as a violation of the Fourteenth Amendment." Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001) (internal citations and quotation marks omitted). In the instant case, Plaintiff admitted he has a prosthetic leg and, even taking into account the fact that he participated in strenuous work on prior occasions, it does not "shock the conscience" that Defendants put physical restrictions on the type of work Plaintiff could perform.

In sum, Plaintiff's due process claim(s) fail as a matter of law.

## C. Equal Protection Claim

The Complaint alleges that Defendants' restrictions on Plaintiff's physical activity because of his prosthetic leg violated his equal protection rights under the Fourteenth Amendment. (Docket Entry 2 at 3.) The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The equal protection requirement does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal citations and quotation marks omitted). In order to state an equal protection claim, a plaintiff "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Id. at 730-31 (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Upon such showing, "'the Court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" Id. at 731 (quoting Morrison, 239 F.3d at 654).

Even if the Court assumes that Plaintiff's Complaint sufficiently alleges disparate treatment as a result of intentional discrimination, it fails to allege facts that would establish a

9

lack of justification for any such disparity. "[W]hen a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" Id. (quoting Heller v. Doe, 509 U.S. 312, 319-20 (1993)). Individuals with disabilities do not constitute a suspect class, see City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 445-46 (1985), and (as previously discussed in Section II.B.) the matters at issue in the Complaint do not involve a fundamental right.

Moreover, "[w]hen equal protection challenges arise in a prison context, [] courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. In a prison context, therefore, [the court] must determine whether the disparate treatment is reasonably related to any legitimate penological interests." Veney, 293 F.3d at 732 (internal citations and quotation marks omitted). Recently, the Fourth Circuit has addressed the question of how rational basis review and the motion to dismiss standard interact, adopting the view of the Seventh Circuit:

> "While [the Court] [] must take as true all of the complaint's allegations and reasonable inferences that follow, [it] appl[ies] the resulting 'facts' in the light of the deferential rational basis standard. To survive

10

>     a motion to dismiss for failure to state a claim, a
>     plaintiff must allege facts sufficient to overcome the
>     presumption of rationality that applies to government
>     classifications."

Giarratano, 521 F.3d at 303-04 (quoting Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992)).

Plaintiff's Complaint does not provide factual matter sufficient to overcome the presumption of reasonableness applied to government or, more specifically, prison, policies. It does not set forth facts showing that Defendants' classifications of Plaintiff lacked a rational basis or a relationship to a legitimate state interest, but only conclusorily contends that Defendants implemented the "bogus restrictions" in order to "make [Plaintiff] have to max out [his] sentence." (Docket Entry 2 at 3.) Further, although the Complaint alleges that Plaintiff, despite his prosthetic leg, performed physically taxing work at other prisons, it does not indicate that Defendants had any knowledge of his prior work history. (Id.) Finally, any number of legitimate state interests could justify Defendants' restrictions on Plaintiff, such as concern for Plaintiff's own health and safety and/or the safety of other inmates with whom he would work, or efficiency of the prison work programs. Plaintiff's equal protection claim therefore fails as a matter of law.

### D. ADA Claims

This Court (per Judge Tilley) previously determined that Plaintiff's official capacity ADA claims could survive only to the

11

extent they arise from adequately pled constitutional violations. (Docket Entry 26 at 2, 11-20.) Because (for reasons set forth in Sections II.B. and C.) Plaintiff has not adequately pled constitutional violations, his official capacity claims under the ADA cannot proceed.

### III. Motion to Reconsider

Defendants "respectfully request[] that this Court reconsider its September 27, 2013, Memorandum Order ([Docket Entry] 26) relating to the Court's determination that Plaintiff plausibly stated a claim against [Defendants] in [their] official capacity for a violation of the Rehabilitation Act." (Docket Entry 29 at 19; see also Docket Entry 31 at 7 ("Insofar as the Court did not have all the facts before, this finding ought to be reconsidered.").)[4] Defendants do not identify the authority under which they request reconsideration. (See Docket Entry 29 at 17-19; Docket Entry 31 at 6-7.) Federal Rule of Civil Procedure 54 states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties . . . may be revised at any time

---

[4] Defendants also request that the Court reconsider a similar determination with regard to the ADA claims as an alternative to finding them barred by sovereign immunity in the absence of a constitutional violation. (See Docket Entry 29 at 17; Docket Entry 31 at 7.) Because, as discussed above in Sections II.B.-D., Plaintiff's Complaint fails to make out a constitutional violation, the Court need not address that request. However, it would fail for the same reasons outlined below.

12

before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b) (emphasis added). Rule 54(b) thus allows the Court to "revisit interlocutory orders at any time prior to final judgment . . . when justice requires it, but [such action] is discretionary . . . ." United States v. Duke Energy Corp., 218 F.R.D. 468, 473-74 (M.D.N.C. 2003) (Eliason, M.J.).

In that regard, although "the standards governing reconsideration of final judgments under Fed[eral] R[ule of] Civ[il] P[rocedure] 59(e) do not limit a court's authority to reconsider an interlocutory decision, courts in the Fourth Circuit have routinely looked to those factors as a starting point in guiding their discretion under Fed[eral] R[ule of] Civ[il] P[rocedure] 54(b)." Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys. Inc., No. 1:05CV955, 2011 WL 6934696, at *2 (M.D.N.C. Dec. 30, 2011) (unpublished) (internal citations omitted). Those factors permit reconsideration: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available [earlier]; or (3) to correct a clear error of law or prevent manifest injustice." Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Additionally, in the context of reconsideration of interlocutory orders under Federal Rule of Civil Procedure 54(b), this Court "previously has declared that '[a] motion to reconsider is appropriate when the

13

court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence.'" Volumetrics Med. Imaging, 2011 WL 6934696, at *2 (quoting Duke Energy, 218 F.R.D. at 474).

"Conversely, 'a motion to reconsider [under Federal Rule of Civil Procedure 54(b)] is not proper where it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party [previously] could have presented . . . .'" Id. (quoting Hinton v. Henderson, No. 3:10cv505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011) (unpublished) (internal citations and quotation marks omitted)). This approach makes sense not only because "[t]he limited use of a motion to reconsider serves to ensure that parties are thorough and accurate in their original pleadings and arguments presented to the Court [but also because] . . . allow[ing] motions to reconsider offhandedly or routinely would result in an unending motions practice." Wiseman v. First Citizens Bank & Trust Co., 215 F.R.D. 507, 509 (W.D.N.C. 2003); see also Coryn Grp. II, LLC v. OC Seacrets, Inc., No. WDQ-08-2764, 2011 WL 4701749, at *2 n.4 (D. Md. Sept. 30, 2011) (unpublished) ("Routine reconsideration of interlocutory orders would undermine judicial economy and respect for the finality of decisions.").

14

Under this standard, Defendants have failed to establish any basis for reconsideration of the decision to allow Plaintiff's Rehabilitation Act claims to proceed. First, they have not identified "an intervening change in controlling law . . .[,] new evidence not available [earlier]," Pacific Ins., 148 F.3d at 403, or "'new evidence that could not have been obtained through the exercise of due diligence,'" Volumetrics Med. Imaging, 2011 WL 6934696, at *2 (quoting Duke Energy, 218 F.R.D. at 474). To the contrary, Defendants have cited neither newly issued controlling authority on point nor any evidence not previously available. (See Docket Entry 29 at 17-19; Docket Entry 31 at 6-7.)

Second, Defendants have failed to show "a clear error of law [, a need to] prevent manifest injustice," Pacific Ins., 148 F.3d at 403, or any "'obvious[] misapprehen[sion by the Court of Defendants'] position or the facts or applicable law,'" Volumetrics Med. Imaging, 2011 WL 6934696, at *2 (quoting Duke Energy, 218 F.R.D. at 474). Defendants argue that Plaintiff's Complaint does not connect the physical restrictions placed on him with the denial of certain jobs. (Docket Entry 29 at 17-18; see also Docket Entry 31 at 7.) However, the Complaint alleges that Defendants placed restrictions on Plaintiff "such as no standing for no more than a [sic] hour, no going up steps, can't pick no more than 10 lbs. up" and that he suffered denials of jobs such as "dorm janitor, kitchen, clotheshouse and labor pool, jobs that [he] held in the

15

past with the same handicap . . . ." (Docket Entry 2 at 3.) At this stage in the proceedings, these facts "allow[] the [C]ourt to draw the reasonable inference," Iqbal, 556 U.S. at 678, that Defendants' actions caused Plaintiff's disqualification from jobs to which he applied.

Defendants next point out that "an inmate who obtains employment while incarcerated may earn gain time of two (2) days, four (4) days or six (6) days per month, <u>depending on the specific work assignment and the number of hours worked per day</u>." (Docket Entry 29 at 18-19 (emphasis added); see also Docket Entry 31 at 7.) According to Defendants, prison policy dictates that an inmate found medically unfit to engage in any work assignment receives credits at the rate of four days per month. (Docket Entry 29 at 19; Docket Entry 31 at 7.) As a result of these facts, of which Defendants ask the Court to take judicial notice (see Docket Entry 29 at 18 n.4, n.5, n.6), Defendants contend the following:

> if Plaintiff was denied all jobs while incarcerated do [sic] to his medical restrictions, which is denied, Plaintiff would have been deemed 'medically unfit' and would have obtained a sentence credit of four (4) days per month under the NCDOC policy, as a reasonable accommodation. The only logical explanation for Plaintiff's allegation that he had to 'max out' his sentence is that Plaintiff was not deemed medically unfit because he was not denied participation in the job program; rather, Plaintiff simply was not given a job of his choice at [Albemarle Correctional Institution]. As a result, Plaintiff has failed to state a claim for a violation of the [Rehabilitation Act] as, pursuant to NCDPS policy, if Plaintiff had actually been deemed unable to obtain employment as a result of his physical

16

>     disability, a reasonable accommodation in the form of
>     sentence credits was available to Plaintiff.

(Id. at 19.)

Defendants' argument falls short for a number of reasons. First, it assumes facts not yet determined. Plaintiff filed his Complaint while still incarcerated, thus it remains unknown at this juncture whether or not he in fact "maxed out" his sentence or received any reduction. More importantly, even accepting Defendants' account of prison policy, the possibility exists that their allegedly erroneous restrictions limited Plaintiff to credit for two or four days per month (either working or pursuant to a medically unfit determination) when he otherwise could have earned six days of credit per month. At this stage of the case, the record does not reflect the method of classifying certain prison jobs or of assigning credits to particular jobs. Thus, it remains unclear whether Plaintiff was, "solely by reason of . . . his disability, [] excluded from the participation in . . . any program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a). The Court thus should deny reconsideration of its ruling on the sufficiency of Plaintiff's official capacity Rehabilitation Act claim.

## IV. Conclusion

Plaintiff's Complaint fails to state constitutional violations pursuant to the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Moreover, Defendants have not articulated

17

proper grounds for the Court to reconsider allowing Plaintiff's official capacity Rehabilitation Act claim to go forward.

**IT IS THEREFORE RECOMMENDED** that Defendant Larry Jones' Motion to Dismiss and Motion for Reconsideration (Docket Entry 28) be granted in part and denied in part, in that the Court should dismiss all remaining claims, except the official capacity Rehabilitation Act claim.

**IT IS FURTHER RECOMMENDED** that Defendant Lewis Smith's Motion to Dismiss the Fourteenth Amendment Claims and for Reconsideration of the Sufficiency of the ADA and Rehabilitation Act Claims (Docket Entry 30) be granted in part and denied in part, in that the Court should dismiss all remaining claims, except the official capacity Rehabilitation Act claim.

                                          /s/ L. Patrick Auld
                                               **L. Patrick Auld**
                              **United States Magistrate Judge**

May 8, 2014